UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

**NOT FOR PUBLICATION**

---------------------------------------------------------------x

In re:

Case No. 804-87471-ast

Robert J. Bunnenberg,

Chapter 7

Debtor.

---------------------------------------------------------------x

Marc A. Pergament, Chapter 7 Trustee of the Estate of Robert J. Bunnenberg,

Adv. Pro. 805-8101-ast

Plaintiff,

-against-

Maria E. Bunnenberg,

Defendant.

---------------------------------------------------------------x

**APPEARANCES:**

Marc A. Pergament, Esq.
Weinberg, Gross & Pergament LLP
400 Garden City Plaza, Suite 403
Garden City, New York 11530

Seth Muraskin, Esq.
1776 East Jericho Tpk.
Huntington, New York 11743

**HON. ALAN S. TRUST, UNITED STATES BANKRUPTCY JUDGE**

## MEMORANDUM OPINION

### Findings of Fact and Conclusions of Law

The following constitute this Court's findings of fact and conclusions of law made pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## Parties

Plaintiff, Marc A. Pergament, is the Chapter 7 Trustee of the Estate of Robert J. Bunnenberg (the "Trustee").

Defendant is Maria E. Bunnenberg ("Defendant" or "Maria"), former wife of the Debtor, Robert J. Bunnenberg ("Debtor" or "Robert").

## Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(H) and 1334(b), and the Standing Order of Reference in effect in the Eastern District of New York.

## Nature of Claims

In this action the Trustee seeks to recover alleged fraudulent transfers and asserts claims pursuant to 11 U.S.C. § 548(a), and the New York Debtor and Creditor Law ("DCL") §§ 270, 273, 275, 276, 276-a, and 278. These claims all arise from a prepetition transfer of Debtor's interest in his former marital residence[1] and the proceeds thereof to Defendant as part and parcel of their divorce and the equitable division of their former marital property (the "Transfer").

## Factual Background

On April 18, 1982, Robert and Maria were married. [PTS ¶ 1][2] From September 16, 1988 through January 2, 2004, Robert and Maria jointly owned the Property as

---

[1] The property at issue is 52 Andrew Lane, Levittown, New York(the "Property").

[2] On January 31,2007, the parties filed a Joint Pre Trial Statement. [dkt item 14]. Facts to which the parties stipulated are referred at PTS ¶ –. References to the trial transcript will be Tr. at -. References to trial exhibits will be Tr. Ex. - .

tenants by the entirety. [PTS ¶ 2] In 2001, Robert commenced an action for divorce in the Supreme Court of the State of New York, County of Nassau (the "Divorce Action"). In approximately October 2001, Robert moved out of the Property.

On October 9, 2002, the parties entered into a Stipulation of Settlement of the Divorce Action (the "Stipulation"), which provided for the distribution of the marital estate. Under the Stipulation, all of Robert's interest in the Property was to be transferred to Maria, and Maria waived any interest in Robert's retirement benefits. [PTS ¶ 6, 8; Tr. Ex. 1] On December 19, 2002, the Nassau County Clerk docketed a Judgment of Divorce (the "Divorce Judgment"), which was issued by the Nassau County Supreme Court. The Divorce Judgment incorporated the terms of the Stipulation. [PTS ¶ 7; Tr. Ex. 2]. The Divorce Judgment required, inter alia, that the parties comply with every enforceable term of the Stipulation.

Between October 2002 and January 2004, Maria made improvements to the Property. During that period, Robert failed to transfer his interest in the Property, despite requests to do so from Maria. In addition, Maria was focused on caring for her children during this period and was not aggressively pursuing the deed from Robert. [Tr. at 94-96] Robert did not make any mortgage payments after October 2002. [Tr. at 94]

Finally, on January 2, 2004, Robert executed the appropriate transfer documents, thereby transferring his interest in the Property to Maria. The deed evidencing this transfer was recorded in Nassau County on March 9, 2004 (the "Recording Date). [PTS ¶ 11, 12] The parties stipulated that the transfer occurred on January 2, 2004 (the "Transfer Date"). [PTS ¶11]

On or about April 14, 2004, Maria sold the Property to unrelated

third parties for $400,000.00. As the result of this sale, Maria received net proceeds of $124,252.00 after payment of mortgages and liens against the Property and costs of sale.

Robert filed a voluntary chapter 7 petition for relief on November 24, 2004.

## Procedural Background and the Parties' Allegations

The Trustee filed this adversary proceeding on March 2, 2005. [dkt item 1] The Trustee alleged, inter alia, that the Transfer was not for reasonably equivalent value, that the Transfer was not for fair consideration, and that the Transfer was made by Robert with the actual intent to hinder, delay or defraud. [Compl. ¶ 22; dkt item 1] The Trustee seeks to recover the estate's alleged 50% interest in the sale proceeds realized by Maria in April 2004, in a sum of no less than $62,126.00.

On April 19, 2005, Maria filed an Answer [dkt item 6], in which she denies many of the allegations made by the Trustee. As affirmative defenses, Maria states, inter alia, this court is without jurisdiction to entertain the complaint herein, and that the petition herein was filed more than a year after the transfer of the real property in the divorce in state court.

The parties filed competing motions for summary judgment. [dkt items 7-11] On November 6, 2006, the Court denied both motions by written order. [dkt item 12]

On December 18, 2006, the Court issued a Final Pre Trial Order, which, inter alia, set the trial on the merits for February 9, 2007. [dkt item 13] On January 31, 2007, the parties filed a Joint Pre Trial Statement. [dkt item 14] Trial was conducted and concluded on February 9, 2007. Both Robert and Maria testified.

On July 31, 2007, the Court issued an Order for Re-opening of Proofs (the

"Order to Reopen") [dkt item 23]. In the Order to Reopen, the Court stated as follows:

> Based upon the proofs at trial, the trustee has not met his burden of proof for the amount of monetary damages he has sought under section 548(a)(1)(B)(I) and (ii)(I). The Court believes there is a misconception of both the relevant principles of New York State law as well as the relevant decisions of the U.S. Court of Appeals for the Second Circuit.
>
> This Court has determined not to dismiss the trustee's complaint because it believes that the trustee has pled a meritorious complaint, but needs to amplify and extend his proofs as to the exact nature and value of the interest that the debtor retained in the Bunnenbergs' former marital residence as of the date of the entry of the Judgment of Divorce and/or by operation of New York State law and the exact nature and value of the equitable distribution of the other marital personal property. The trustee's presentation of the discounted value of the debtor's vested interest in his pension plan and/or other retirement benefits, free of any contingent or equitable claim of the former Mrs. Bunnenberg, is unsupported by any actuarial analysis. This can be remedied with an actuarial analysis of these vested interests and their present discounted value.
>
> The trustee's same approach to proof of value also included his argument for positing the value of the debtor's car, van, or truck, and whether there was a range of an unsecured deficiency claim. Without admissible factual evidence, the trustee's analysis of the debtor's insolvency, if any, as of the date of the entry of the Judgment of Divorce as well as of the date of the recording of the debtor's bargain and sale deed is incomplete. The defendant needs to amplify and extend her affirmative defenses and proofs to satisfy both the relevant principles of state law and federal bankruptcy law at least with respect to the appraised value of the former marital residence in Levittown as of the date of entry of the Judgment of Divorce including: (1) the costs to complete the remodeling or expansion project beginning from the date of the debtor's vacating the residence, and (2) the costs she expended from the date the debtor abandoned the former marital residence to the April 2004 sale to unrelated third parties, including but not limited to paying ( I) the debt service on the first and second mortgages, (ii) real estate taxes, (iii) premiums for property insurance, and (iv) the costs of preserving and protecting the property.

Order to Reopen [dkt item 23]

On May 14, 2008, this Court issued a Scheduling Order [dkt item 28], which, inter alia, ordered that the Trustee shall serve and file all affidavits and other proofs as discussed in the Order to Reopen on or before June 30, 2008, and that the Defendant shall file supplemental affidavits and/or proof, if any, as discussed in the Order to

Reopen, on or before August 31, 2008. This Scheduling Order further directed the parties to advise the Court by September 5, 2008, if they desire to conduct cross-examination of the affiants or any other examination with respect to the supplemental submissions. This Court further Ordered that, if parties advise the Court that they desire to conduct further examination with respect to the supplemental submissions, a trial limited to these issues would be conducted on September 16, 2008, at 2:00 p.m.

Both parties filed supplemental submissions. [dkt items 29, 30] However, neither party requested the right to cross examine the affiants on these supplemental submissions. Therefore, the trial setting was vacated by Order entered September 11, 2008, and this matter was taken under submission. [dkt item 32]

**The Agreements Between the Divorcing Parties, and the Exchange of Consideration Under the Stipulation**

The centerpiece of the Stipulation was that Maria received the Property and Robert retained his retirement benefits. In exchange for the Transfer, Maria waived any and all rights to Robert's 401(k) account and his pension plan with Stop-N-Shop. [Tr. at 38-39] At the time Robert and Maria executed the Stipulation, the amount on deposit in Robert's 401(k) plan was approximately $25,000.00. [Tr. at 13-14] At the time Robert and Maria executed the Stipulation, Robert's pension plan with his then employer, Stop-N-Shop, called for Robert to receive approximately $1,400.00 per month commencing, in the year 2025. [Tr. at 13-14, 38]

Although the value of Robert's interest in his Stop-N-Shop pension plan was difficult to measure as of the Transfer Date, the Trustee did not provide any evidence of the present value thereof. [Tr at 13, 46-47] In his supplemental post-trial submissions,

the Trustee provided actuarial analysis demonstrating that Robert had a life expectancy of eighty-three (83) years. [dkt item 29] Robert was forty-three (43) years old in October 2002, so his retirement benefits would have commenced twenty-three (23) years later, at age 65, in the amount of $1,400.00 per month. [Tr. at 13] Given Robert's life expectancy, these benefits would have run for eighteen (18) years in the amount of $16,600.00 per year, for a total future value of $302,400.00. As set out in the Order to Reopen, the burden was on the Trustee to demonstrate the value of the future income stream that Robert would have been entitled to receive.

**Debtor's Schedules and His Financial Condition**

No Property was listed on Schedule A.

On Schedule B to his Bankruptcy Petition, the Debtor listed personal property as follows: $1,000.00 in bank accounts; $2,000.00 in United States Savings bonds; $750.00 worth of furnishings; $750.00 worth of clothing; $600.00 for a Yamaha ATV; and a 1998 Ford Expedition, with a fair market value of $6,100.00 ("Ford Expedition"). [PTS ¶ 17; Tr. Ex. 7]

Schedule D listed a secured debt of $16,000.00 to GMAC for money Debtor borrowed to buy a used 1998 Ford Expedition sometime in 2002. Schedule F listed unsecured creditors with claims in excess of $75,000.00. [PTS ¶ 18] At least $48,000.00 of this credit card debt was incurred in the time frame specifically delineated "2001-2004" for credit card purchases and cash advances. Approximately $20,000.00 was incurred in 2003 for credit card purchases and cash advances. Levitz furniture is listed for $3,278.00 for a debt incurred in 2000 and Yamaha Motor Corp. is listed for

$3,103.00 for purchases in 2002. [Tr. Exs. 17, 21, 22, 23 & 24].

In October 2002, when the Stipulation was entered into, Debtor's assets were limited to his interest in the Property: a 1998 Ford Expedition; approximately $4,000.00 in savings bonds; approximately $1,000.00 in his checking account; and his 401(k) and other deferred compensation. [Tr. at 13-14, 27-28] As of October 2002, the Debtor had liabilities in excess of $43,000.00. [Tr. at 12, 48, 50-51; Tr. Exs. 17, 21, 22, 24] Specifically, the Debtor owed:

$17,412.00 to Bank One [Tr. at 51; Tr. Ex. 17];

$5,711.00 to American Express (Optima) [Tr. at 48, 51; Tr. Ex. 22];

$708.00 to Macy's [Tr. at 50, 51; Tr. Ex. 21];

$3,000.00 to Levitz [Tr. at 48, 51; Tr. Ex. 24];

$1,000.00 (approximately) to Mobile [Tr. at 50]; and

$16,000.00 for the loan the Debtor obtained to purchase the 1998 Ford Expedition [Tr. at 12].

After October 2002, and before the Transfer Date, the Debtor incurred additional credit card debt by taking cash advances to pay his child support and rent obligations. [Tr. at 52] Between October 2002 and January 2004, when Robert executed the deed to Maria, Robert was in constant financial difficulty and incurring a deficit in his living expenses of approximately $525.00 a month. [Tr. at 24-25]

In October 2002, when Robert and Maria executed the Stipulation, Robert understood the fair market value of the Property to be approximately $300,000.00. This belief was based on Maria's representation to Robert that she had obtained an appraisal of the Premises. [Tr. at 32, 40] However, Robert was never provided with, nor

did he review a copy of, this appraisal. [Tr. at 33]

Maria did not, in fact, have the Premises appraised in October 2002. [Tr. at 93] Maria did, however, obtain an appraisal in June or July 2001 in conjunction with seeking a refinancing of the Property. The refinance was sought so that certain improvements could be made, including, but not limited to, the addition of an upstairs front dormer, which substantially increased the living space of the Premises. [Tr. at 35, 41, 90, 91] This appraisal valued the Property at $290,000.00 to $300,000.00. Based thereon, Robert and Maria, while still legally married, obtained a home equity loan of approximately $45,000.00 from Dime Savings Bank. [Tr. at 44]

Thus, as of the time of the Stipulation, the Property had a value of approximately $300,000.00, and was subject to a first lien of approximately $220,000.00 in favor of Washington Mutual, and a second lien of approximately $45,000.00 in favor of Dime Savings.

In December 2003, one year after the execution of the Stipulation, Maria listed the Property for sale at a listing price of $405,000.00. [Tr. at 84] She then sold the Property for $400,000.00. The sale closed on April 16, 2004. From the sale proceeds, Maria satisfied the first mortgage in the sum of $226,181.00, satisfied the second mortgage in the sum of $35,131.00, and paid a real estate broker a commission of $16,000.00. [Tr. at 5-6] Maria received the net sum of $124,252.00. Robert did not receive any of the sales proceeds.

**Standards for Avoidance Under Bankruptcy Code Sections 544(b) and 548**

Bankruptcy Code Section 544(b) authorizes the Trustee to avoid "any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim . . . ." 11 U.S.C. § 544(b)(1). The "applicable law" upon which the Trustee relies is set forth in DCL Sections 270, 273, 275, 276, 276-a, and 278 and discussed below.

Bankruptcy Code Section 548(a), in effect when the Debtor filed this case, authorized the Trustee to avoid a transfer made for less than reasonably equivalent value within one (1) year prior to the petition date, which is made when the debtor is insolvent, or which renders the debtor insolvent.[3]

**Standards for Avoidance of Fraudulent Conveyances Under New York Law**

Under New York law, a transfer can be a fraudulent conveyance as the result of either actual intent by the transferor to hinder, delay or defraud, or the financial status of the transferor and the economic equivalence of the transaction. A constructively fraudulent transfer occurs when the transfer is made without fair consideration, as defined by DCL Section 272, and (1) the transferor will be rendered insolvent (DCL § 273), or (2) the transferor intends or believes that he or she will incur debts beyond his or her ability to pay them as they mature (DCL § 275).[4] See In re Manshul Constr.

---

[3] Prior to the October 17, 2005, amendments to the Bankruptcy Code provided under the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), the applicable look-back period under § 548(a) was one (1) year. Section 548(a) was amended to provide a two (2)-year lookback. This bankruptcy case was filed prior to the effective date of the relevant BAPCPA amendments, and this Court applies the Bankruptcy Code and Rules as they existed prior to the enactment of BAPCPA.

[4] N.Y. DEBT. & CRED. LAW § 274, which is not implicated by the Amended Complaint, also deals with constructive intent fraudulent conveyances where the transferor is engaged in business and will be left with unreasonably small capital.

Corp., No. 96B44080(JHG), 2000 WL 1228866 *48-49(S.D.N.Y. Aug. 30, 2000)(citing MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co., 910 F.Supp. 913, 936 (S.D.N.Y. 1995)). In general, the plaintiff bears the burden of proving the lack of fair consideration. United States v. McCombs, 30 F.3d 310, 324 (2d Cir. 1994).

DCL § 272 defines "fair consideration" as follows:

> Fair consideration is given for property or obligation,
>
> a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
>
> b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

DCL § 272 (McKinney's 2008).

Courts generally agree that the concept of fair consideration "can be an elusive one that defies any one precise formula," and that a determination as to whether fair consideration has been made turns on the facts of each specific case. See McCombs, 30 F.3d at 326.

DCL § 276 governs a fraudulent conveyance made with actual intent and provides:[5]

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

DCL § 276 (McKinney's 2008).

---

[5]The Trustee also seeks to recover attorneys' fees and expenses pursuant to DCL § 276-a. Under this Section of New York law, the Trustee may recover his fees and expenses only if he is able to prove that a fraudulent conveyance made with actual intent occurred.

The burden of proving the "actual intent" of the transferor is on the party seeking to set aside the conveyance. This intent must be established by clear and convincing evidence. "[A]ctual intent to defraud must be proven by the party seeking to set aside the conveyance by clear and convincing evidence." McCombs, 30 F.3d at 328 (citing Marine Midland Bank v. Murkoff, 120 A.D.2d 122, 126, 508 N.Y.S.2d 17, 20 (2d Dep't 1986) and ACLI Gov't Sec. v. Rhoades, 653 F.Supp. 1388, 1394 (S.D.N.Y.1987)).

Actual intent to defraud is rarely susceptible to direct proof. Therefore, the Second Circuit Court of Appeals has enumerated certain "badges of fraud" which can establish actual intent. The nonexclusive list of badges of fraud includes:

1. lack or inadequacy of consideration;
2. family, friendship or close associate relationship between the parties;
3. retention of possession, benefit or use of the property in question by the debtor;
4. the financial condition of the transferor before and after the transfer in question;
5. the existence or cumulative effect of a pattern or series of transactions or course of conduct after the debt is incurred, the onset of financial difficulties, or pendency of threat of suits by creditors; and
6. the chronology of the events and transactions under inquiry.

Solomon v. Kaiser (In re Kaiser), 722 F.2d 1574, 1582-83 (2d Cir. 1983).

In his Complaint, the Trustee seeks recovery under DCL Sections 278 and 279. Section 278 sets forth the rights of creditors whose claims have matured and provides:

> 1. Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser,
>
> a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or
>
> b. Disregard the conveyance and attach or levy execution upon the property conveyed.
>
> 2. A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment.

DCL § 278 (McKinney's 2008).

DCL Section 279 articulates the relief available to creditors whose claims have not matured, and provides:

> Where a conveyance made or obligation incurred is fraudulent as to a creditor whose claim has not matured he may proceed in a court of competent jurisdiction against any person against whom he could have proceeded had his claim matured, and the court may,
>
> a. Restrain the defendant from disposing of his property.
>
> b. Appoint a receiver to take charge of the property,
>
> c. Set aside the conveyance or annul the obligation, or
>
> d. Make any order which the circumstances of the case may require.

DCL § 279 (McKinney's 2008).

## Analysis

### The Trustee Did Not Meet His Burden of Proving That the Transfer Was a Fraudulent Transfer Under Bankruptcy Code Section 548(a)

The Trustee did not meet his burden of proving that the Transfer was a fraudulent transfer under Bankruptcy Code section 548(a) based upon the consideration exchanged.[6] When the parties entered into the Stipulation in October 2002, Robert had less than $50,000.00 of equity in the Property. Robert was required to transfer his interest in the Property as part of the Stipulation. [PTS ¶ 8] Robert received at least $12,500.00 in value for keeping 100% of his 401(k), and received an unknown but quantifiable value for keeping all of his Stop-N-Shop pension, which had an estimated future value of $302,400.00. The Trustee failed to meet his burden of proving that the value in the Property Robert relinquished was not reasonably equivalent to the value he received by retaining his retirement benefits, whether measured at October 2002 (Stipulation date) or January 2004 (Transfer Date) or March 2004 (Recording Date).

Moreover, the Trustee incorrectly assumes that Robert would have been entitled to 50% of the net equity value of the Property when Maria sold it in April 2004, without having to account to Maria for funds she expended for mortgage payments, taxes, insurance, and upkeep of and improvements to the Property after October 2002. Maria testified that the house was not finished when Robert moved out and that she made

---

[6] This Court has recently issued an opinion in Robert L. Pryor, as Chapter 7 Trustee of the Bankruptcy Estate of Michael Zerbo vs. Debra Zerbo, Adv. Pro. No. 06-08124-ast (Nov. 26, 2008), which determined, inter alia, that a division of marital property which is made a part of a divorce decree is conclusively determined to be for reasonably equivalent value under Section 548, absent collusion or extrinsic fraud. Maria did not raise this as a defense, so the Court does not apply the holding in Pryor v. Zerbo to this case.

improvements to the Property between October 2002 and April 2004, primarily in finishing out a second bathroom. [Tr. at 90-92] Maria also testified that Robert did not make any mortgage payments after October 2002. [Tr. at 94] Without evidence of how the net sales proceeds would have been charged with Maria's claims for preserving and improving the Property, the Trustee has not established how much of the $124,252.00 Robert might have been able to claim.

**The Trustee Also Did Not Prove Debtor's Insolvency**

The Trustee did not meet his burden of proving Debtor's insolvency. While Debtor had certain liabilities at the Transfer Date, he also had his pension and retirement benefits. As noted, the Trustee did not prove the present value of the future Stop-N-Shop pension payments. Therefore, the Trustee did not meet his burden of proving Debtor was insolvent at the date of the Transfer nor rendered insolvent as the result thereof. Therefore, that portion of the Trustee's Complaint seeking relief under Section 548 should be denied.

**The Trustee Did Not Meet His Burden of Proving That the Transfer Was a Fraudulent Transfer Under New York Law**

The Trustee did not meet his burden of proving that the Transfer was a fraudulent transfer under New York law, specifically, under DCL Sections 270, 273, 275, 276, 276-a and 228.

As noted above, a constructively fraudulent transfer occurs when the transfer is made without fair consideration as defined by DCL Section 272, and (1) the transferor will be rendered insolvent (DCL § 273), or (2) the transferor intends or believes that he

or she will incur debts beyond his or her ability to pay them as they mature (DCL § 275). The Transfer here was for fair consideration, and the Trustee did not prove otherwise. In addition, the Trustee did not prove that Debtor was not rendered insolvent thereby, or that he intended or believed that he would incur debts beyond his ability to pay them as they matured.

The Trustee also did not prove that the Transfer was a fraudulent conveyance made with actual intent to defraud under DCL § 276. The Trustee also has not proven he is entitled to any recovery of attorneys fees under DCL § 276-a. Finally, the Trustee has not proven he is entitled to any recovery for creditors whose claims have matured under DCL Sections 278 and 279.

Therefore, that portion of the Trustee's Complaint seeking relief under the New York Debtor and Creditor Laws should be denied.

## CONCLUSION

All relief sought by the Trustee shall be denied. A Judgment consistent herewith will be entered.

Dated: December 5, 2008
Central Islip, New York

Alan S. Trust
United States Bankruptcy Judge